# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG ATKINS, ANDREW DUREN AND JOEL DAVENPORT,<br>    Plaintiff,<br><br>v.<br><br>BOROUGH OF PHOENIXVILLE, MICHAEL BAUERLY, DAVID BOELKER, E. JEAN KRACK MICHAEL SPECK, PHOENIXVILLE POLICE DEPARTMENT, WILLIAM MOSSMAN, PECO ENERGY COMPANY, PECO EMPLOYEES JOHN BROWNS 1-100, LANCE FROST, KYLE PLACE, PATRICK MARK AND PHOENIXVILLE HOSE, HOOK AND LADDER #1,<br>    Defendants. | CIVIL ACTION<br><br><br>NO. 16-4503 |

## MEMORANDUM OPINION

"The Court has consistently held that some kind of hearing is required at some time before a person is finally deprived of his property interests." *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). This civil rights case requires determining what "some kind of hearing" looks like when a town deems property uninhabitable. *See* 42 U.S.C. § 1983. Plaintiffs Craig Atkins, Andrew Duren, and Joel Davenport claim that the Borough of Phoenixville and its officials violated their due process rights in concluding that their building, the Pennsylvania House Hotel, was unfit for human habitability. As the Borough's officials discovered, the Hotel suffered from a litany of fire hazards, ranging from gas leaks to broken fire extinguishers. Plaintiffs allege, however, that the Borough failed to give them adequate pre-deprivation notice in deeming the Hotel unfit for habitability and, in any event, failed to provide a post-deprivation remedy. Plaintiffs further aver that PECO, a private utility company, violated their constitutional rights in a similar way by shutting off the Hotel's utilities. Plaintiffs and Defendants have filed motions

for summary judgment. For the reasons that follow, Plaintiffs motion shall be denied, and Defendants' motion shall be granted.

## I. LEGAL STANDARD

"[S]ummary judgment is appropriate where there is 'no genuine dispute of material fact' and the moving party is 'entitled to judgment as a matter of law.'" *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (quoting Fed. R. Civ. P. 56(c)). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986)). "The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe*, 480 F.3d at 256 (citing *Celotex*, 477 U.S. at 322-26). And a court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

Counsel for Plaintiffs failed to comply with the procedural requirements in moving for summary judgment and in opposing Defendants' motions for summary judgment. Rule 56(c) requires that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion" by either "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence of presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). All of Plaintiffs' briefing lack citations to the Joint Appendix submitted by the parties. Plaintiffs furthermore did not submit a statement of undisputed material facts for their motion for summary

judgment or a statement of disputed material facts for their opposition briefing. Accordingly, insofar as Defendants have substantiated their factual contentions with correct references to the Joint Appendix, those contentions will be considered undisputed. Fed. R. Civ. P. 56(e)(2).

"[I]t is the attorney's job (not the court's) to closely examine the record to determine if sufficient issues of fact exist to warrant a trial." *Russell v. City of Phila.*, 698 F. App'x 709, 710-11 (3d Cir. 2017) (affirming grant of summary judgment based on plaintiffs' technical deficiencies in their opposition briefing); *see also Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) ("[U]nsupported allegations . . . are insufficient to repel summary judgment."). With this in mind, the Court now turns to the undisputed facts of this case.

## II. FACTUAL BACKGROUND

From 2003 to 2015, Atkins, Davenport, and Duren owned the Pennsylvania House Hotel in Phoenixville. The Hotel has five levels, including four stories and a basement. The Hotel principally offered units for rent on a weekly basis, and it was usually about 70-80% occupied. During the relevant time period of this dispute, the Hotel was mainly used as a multifamily dwelling.

At some point in November 2014, an unnamed Hotel resident invited David Boelker, Director of Code Enforcement for the Borough of Phoenixville, to examine the premises. The resident expressed some concerns about the Hotel's living conditions, fearing that the property was unsafe for his wife, child, and grandchildren. Along with Michael Baurley, a Building Code Official for the Borough of Phoenixville, Boelker entered the Hotel and took photographs of the premises. The initial inspection was limited to the hallways of the Hotel. Based on what they saw, Boelker concluded that a search warrant was necessary to determine if there were building code violations.

3

As a result, the Borough applied for an administrative search warrant to examine the Hotel. In the affidavit section, the Borough stated that "[t]he purpose of said warrant is for establishing proper Heating requirements . . . as well as other safety issues with regard to egress, sprinkler systems, electrical panels, proper working bathing facilities." The warrant was then signed.

In early December 2014, Baurley, Boelker, other building code officers, Harry Weaver of Barry Isett & Associates, Inc. ("BIA"), and the Phoenixville Fire Department (including its Chief, John Buckwalter) began inspecting the Hotel.[1] Phoenixville police officers were also at the scene. After conducting a walk-through, the Fire Department found that several issues plagued the Hotel's residential spaces. Summarizing its findings in a report, the Fire Department noted that there were multiple active gas leaks on the second floor of the hotel. Sprinkler heads were found covered in the common hallways. There was no posted escape plan. There were no functional fire extinguishers. Of the apartments surveyed, the Fire Department discovered that "the overwhelming majority had missing or nonfunctional smoke detectors." One apartment had "an outlet with what appeared to be burn marks around it from a potential fire incident." During his inspection, Chief Buckwalter observed an open flame in the Hotel. In his view, this presented an "emergency situation" due to the potential of an explosion.

Other areas in the Hotel were similarly hazardous. The basement had no functional exit sign or emergency lighting. Its egress doors were padlocked from the inside. The electrical panels were open and wires were exposed. The smoke detector was inoperable. The Fire Department's report further observed additional fire hazards in the rear office area and ground level commercial space of the Hotel. The office had "multiple devices plugged into a single

---

[1] BIA has provided services to the Borough for at least 15 years, acting as one of its third-party construction agencies responsible for enforcing Pennsylvania construction codes. Weaver has served as the Borough's Construction Code Official since 2013.

outlet." Indeed, surge protectors were plugged into other surge protectors, creating an "electrical octopus." The ground level had no working smoke detectors and functional emergency egress lighting. The egress doors were padlocked from the inside. Mattresses were piled against the wall. The sprinkler heads were obscured by construction materials.

Given these myriad problems afflicting the Hotel, it was declared unfit for human habitation on the same day of the inspection. A day afterwards, PECO terminated gas service to the Hotel and removed its electric meters.

BIA would later complete a report that included findings about the Hotel's compliance with local construction codes. According to the BIA report, the Hotel "contained no permanent heating facilities." The "central boilers were observed in a state of disrepair." The BIA report confirmed the Fire Department's account in several respects as well. It too observed the smell "indicative of a natural gas leak" on the second floor. The BIA report also observed "sprinkler heads that have been obstructed." Further, it noted the "disorderly storage of mattresses, televisions, boxes, and other combustible materials." The exit doors on two of the floors were "found boarded, locked, and equipped with signage forbidding [their] use." As for the residential units, a majority of them lacked a "functioning smoke detector, many without a smoke detector entirely." Based on these factual findings and more, the BIA report concluded that the Hotel was uninhabitable and presented unsafe conditions in violation of local building codes.

Plaintiffs then sued the Borough, multiple Borough officials, and PECO as well as its employees under Section 1983. For ease of reference, the Borough, and its officials and police officers will be collectively referred to as the "Borough Defendants." Other Borough officials included in this lawsuit are the former Chief of the Phoenixville Police Department, William

5

Mossman; former Mayor of Phoenixville, Michael Speck; and Borough Manager, Jean Krack. Plaintiffs have also sued three Phoenixville police officers – Lance Frost, Kyle Place, and Patrick Mark – who were present at the Hotel during the December inspection. PECO and its employees will be referred to as the "PECO Defendants."

The gravamen of Plaintiffs' claims is that Defendants did not afford them due process of law in finding that the Hotel was unsuitable for habitability. Plaintiffs have moved for summary judgment, contending that there is no dispute that Defendants violated their constitutional rights. Defendants, in turn, have also filed a motion for summary judgment, seeking dismissal of Plaintiffs' remaining Section 1983 claims.[2]

### III. DISCUSSION

To succeed, a claim under Section 1983 requires that a defendant, under color of state law, violated a federal right of the plaintiff's. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). At issue here are three types of constitutional claims: (1) procedural due process violation based on lack of a pre-deprivation hearing; (2) procedural due process violation based on lack of a post-deprivation remedy; and (3) substantive due process violation. Plaintiff also asserts that the Borough is liable for these constitutional violations under *Monell v. Dep't of Soc. Svcs. of City of N.Y.*, 436 U.S. 658 (1978). Each claim will be considered in turn.

    **a. Procedural Due Process Claim for Lack of a Pre-Deprivation Hearing**

        *i. Against Borough Defendants*

A claim under Section 1983 for deprivation of procedural due process requires: (1) the deprivation of an individual interest that is encompassed within the Fourteenth Amendment's

---

[2] This case was reassigned from the calendar of the Honorable Legrome D. Davis. ECF No. 67. In a prior order adjudicating the Defendant's motion to dismiss under Rule 12(b)(6), Judge Davis dismissed some of Plaintiffs' Section 1983 claims. ECF No. 65.

protection of "life, liberty, or property" and (2) the procedures available to the plaintiffs did not provide "due process of law." *See Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). As there is no dispute that Plaintiffs were deprived of their property, the sole question is whether they were afforded due process of law. Plaintiffs contend that the Borough Defendants violated their procedural due process rights in deeming the building unfit for habitation without initiating a pre-deprivation hearing.

As a matter of due process, "summary administrative action may be justified in emergency situations." *See Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (quoting *Hodel v. Va. Surface Mining & Recl. Ass'n*, 452 U.S. 264, 300 (1981)). The standard is whether there is "competent evidence supporting the reasonable belief" that the situation presents an "emergency" and whether the defendant's "actions [are] otherwise 'arbitrary' or an 'abuse of discretion.'" *Id*. at 418 (quoting *Catanzaro v. Weiden*, 188 F.3d 56 (2d Cir. 1999)). In *Elsmere Park*, the Third Circuit affirmed a grant of summary judgment against a Section 1983 plaintiff when the town summarily condemned an apartment due to a severe mold problem. *See id*. at 417-20. As the *Elsmere Park* court reasoned, the housing complex presented an "emergency situation" because the basement apartments "were overrun with mold," and "several state experts" noted that the mold "potentially posed a substantial and immediate threat to the health and welfare" of the apartment residents. *Id*. at 419.

The "emergency situation" exception applies in this case. The Borough Defendants have adduced competent evidence supporting their reasonable belief that the building conditions presented an emergency situation. It is undisputed that there were tenants living in the building – some of which included senior citizens. It is also undisputed that the Hotel contained various fire hazards: multiple gas leaks, exposed electrical panels, combustible material throughout the

7

Hotel, and one open flame that was personally seen by Chief Buckwalter. There were no functional extinguishers, smoke detectors, or posted exit plan. Some of the egress doors were locked. Given these circumstances, the Borough's officials had a reasonable belief of an emergency situation that threatened the health and welfare of the Hotel residents. *See id.* As the First Circuit has explained in a due process case, "No one can seriously doubt that emergency conditions may exist (***e.g., a severe fire hazard***) that would warrant a peremptory shutdown of a residential building." *Herwins v. City of Revere*, 163 F.3d 15, 18 (1st Cir. 1998) (emphasis added). Plaintiff has not otherwise proffered evidence to show that the Borough Defendants' summary administrative action was arbitrary or constituted an abuse of discretion. *See Elsmere Park*, 542 F.3d at 418. Accordingly, summary judgment shall be granted as to Plaintiff's Section 1983 claim as predicated on the lack of a pre-deprivation hearing.

### ii. Against PECO

A Section 1983 claim based on procedural due process requires deprivation of some sort by a "state actor." *See Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). Action by a state actor is a "threshold issue," and liability does not attach under Section 1983 "for those not acting under color of law." *Groman*, 47 F.3d at 638. Plaintiffs bear the burden of showing that PECO was a state actor. *Id*. In this case, Plaintiffs' contention is that PECO was a state actor because the Borough Defendants ordered it to terminate the Hotel's utilities.

To determine if PECO's conduct was state action, the central inquiry "is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach*, 589 F.3d at 646 (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)). The answer to that question requires consideration of "three broad tests generated by Supreme Court jurisprudence to determine whether state action exists."

*Id.* They are as follows: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"[3]; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Id.* (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)). Each test is "fact-specific," but only the latter two will be considered. *See id.*

Plaintiffs have failed to marshal any evidence to suggest that the PECO Defendants "acted with the help of or in concert" with Borough officials, or that PECO Defendants can be "recognized as a joint participant," acting interdependently with the Borough. *See id.* Plaintiffs only state in conclusory terms that the PECO Defendants, along with the Borough Defendants, "devised a plan" to deprive Plaintiffs of the Hotel. Not so. Chief Buckwalter testified that he did not give any orders to PECO to terminate gas service or remove the Hotel's electrical meters. And Baurley testified that he had no knowledge of anybody in the Borough giving orders to PECO to cancel the utilities. Therefore, due to Plaintiffs' failure to point to any record evidence of the PECO Defendants' joint participation with the Borough Defendants, summary judgment shall be granted as to Plaintiffs' claim against the PECO Defendants for lack of a pre-deprivation hearing.

### b. Procedural Due Process Claim for Lack of a Post-Deprivation Remedy

#### i. Against Borough Defendants

Because a pre-deprivation hearing was not required, the Court "must nevertheless determine whether the postdeprivation remedy" that the Borough offered was adequate. *Elsmere Park*, 542 F.3d at 420. In other words, even though emergency circumstances may excuse pre-

---
[3] Judge Davis's prior order concluded that the first test did not apply. ECF No. 65.

deprivation notice, the Borough had to "make available 'some meaningful means by which to assess the propriety of the State's action at some time after the initial taking' in order to 'satisfy the requirements of procedural due process.'" *Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)). If the Borough offered an adequate post-deprivation remedy, but Plaintiffs failed to avail themselves of it, then granting summary judgment against Plaintiffs' other procedural due process claim is appropriate. *See id.*

In *Elsmere Park*, the Third Circuit concluded that the town provided the plaintiff with "adequate means of appealing the condemnations" at issue. *Id.* at 423. The *Elsmere Park* court looked to the local code, noting that the plaintiff had an avenue to challenge the condemnations through the town's Board of Adjustment – an appellate forum established as part of the town's zoning code. *Id.* at 422. Because there was such an "administrative body empowered to hear [the plaintiff's] appeal," as well as "procedures . . . specifically designed to address appeals of condemnation decisions," the town's post-deprivation hearing procedure was deemed sufficient. *Id.* at 423.

On the facts of this case, the Borough's appeals process was adequate. Insofar as Plaintiffs contend that they lacked notice that the Borough closed down the Hotel in early December, the undisputed facts belie this assertion. According to Section 11-215 of the Phoenixville Borough Code, "When the Housing Inspector determines that there exists a violation of any provision of this Part, he shall give written notice of such violation to the violator." The Borough did so when Baurley sent a letter to Atkins shortly after the Hotel was deemed uninhabitable in early December 2014. The letter cited, among other things, a specific provision of the Borough's code governing designations of dwellings as unfit for human habitation. That provision, Section 11-218 of the Phoenixville Borough Code, stated that when

10

the Housing Inspector "finds that any dwelling constitutes a serious hazard to the health or safety of the occupants . . . he shall designate such dwellings as unfit for human habitation." At the latest, Atkins knew about Baurley's letter by late January 2015.[4] And, in any case, the Borough posted a large pink sign about the Hotel's inhabitability on its office door, which Davenport saw.

Like the town in *Elsmere Park*, the Borough provided an appeals process. As Section 11-215 provides, "Any person aggrieved by a decision or an action of the Housing Inspector may appeal to the Board of Housing Appeals for a review of the decision in accordance with procedures described by the Board of Housing Appeals." The same section also notes that when emergency action is taken by the Housing Inspector, priority is given to any appeals of that action. Based on two of the Plaintiffs' deposition testimony, they knew that they could appeal the Borough's decision. Duren conceded that he could "challenge the condemnation decision of the Borough. . . ." Atkins was aware of his right to appeal based on correspondence he received from the Borough before the December inspection. Atkins further testified that he conferred with his attorneys – current counsel in this case – to determine the reasons for the Borough's action. Atkins testified at his deposition that he thought his attorneys contacted Borough officials to inquire about the Hotel's shutdown. But it is undisputed that neither Plaintiffs nor their attorneys appealed the Borough's decision. Plaintiffs' briefing does not otherwise explain, with citations to the record, why the Borough's appeals process is insufficient. *See* Fed. R. Civ. P. 56(c)(1). Consequently, Plaintiffs' failure to "take advantage" of the appeals process "means that [they] cannot claim a constitutional injury." *Elsmere Park*, 542 F.3d at 423.

---

[4] Atkins emailed his counsel, on January 24, 2015, that he "just got a certified copy of the letter" from the Borough. However, he added that it was "the same one [Plaintiffs] already have," suggesting that Plaintiffs and their attorneys already received notice from the Borough about the Hotel's habitability issues.

11

> ii. *Against PECO Defendants*

Plaintiffs have pointed to no record evidence that the PECO Defendants can be regarded as "state actors" for purposes of their procedural due process claim based on a lack of post-deprivation remedy. *See Kach*, 589 F.3d at 646. Thus, summary judgment shall be granted on this claim.

## c. **Substantive Due Process Claim against Borough Defendants**[5]

Section 1983 provides a remedy for violations of substantive due process under the Fourteenth Amendment. *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008). A substantive due process claim requires two elements: (1) "the particular interest at issue is protected by the substantive due process clause" and (2) "the government's deprivation of that protected interest shocks the conscience." *See id.* Because property ownership is an interest entitled to the protection of substantive due process, the question here is whether the Borough Defendants' conduct "shocks the conscience." *See id.*

The shocks-the-conscience standard is a fact-specific inquiry. *See id.*; *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) ("[T]he measure of what is conscience shocking is no calibrated yard stick. . . ."). This standard "encompasses 'only the most egregious official conduct.'" *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003) (quoting *Lewis*, 523 U.S. at 846). Plaintiffs have provided no such evidence. Plaintiffs, for example, have not cited to any indication of corruption or self-dealing. *See Chainey*, 523 F.3d at 220. Further, Plaintiffs' own opposition briefing does not respond to the Borough Defendants' argument about the lack of evidence in support of a substantive due process violation. *See Laborers' Int'l Union of N.A., AFL-CIO v. Foster Wheeler Energy Corp.*,

---

[5] Judge Davis's prior order dismissed Plaintiffs' substantive due process claims against the PECO Defendants. ECF No. 65.

12

26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief. . . ."). Therefore, summary judgment shall be granted as to this claim.

### d. *Monell* Claims against Borough

A *Monell* claim requires an underlying constitutional violation. *Burgos v. City of Phila.*, 270 F. Supp. 3d 788, 796 (E.D. Pa. 2017). Due to Plaintiffs' failure to create a genuine dispute of material fact for all of their Section 1983 claims against the Borough officials, the *Monell* claims against the Borough necessarily fail.

### e. Plaintiffs' Motion for Summary Judgment

Because Plaintiffs have not pointed to any record evidence in support of their Section 1983 claims, *see* Fed. R. Civ. P. 56(c), and for the reasons stated above, their motion for summary judgment shall be denied.

An order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**Date: August 27, 2018**  **WENDY BEETLESTONE, J.**